UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STEPHANIE RECKARD,

      Plaintiff,

v.                                                                   Case No: 6:22-cv-1947-EJK

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

## ORDER[1]

This cause comes before the Court on Plaintiff's appeal of an administrative decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging January 10, 2018, as the disability onset date. (Doc. 17 at 1.) In a decision dated December 10, 2021, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled. (Tr. 13–35.) Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The undersigned has reviewed the administrative record, the parties' memoranda (Docs. 17, 19, 20), and the applicable law. For the reasons stated herein, the Court **REVERSES** the Commissioner's decision.

---

[1] On January 23, 2023, both parties consented to the exercise of jurisdiction by a magistrate judge in this case. (Doc. 8.) Accordingly, the case was referred to the undersigned by an Order of Reference on January 24, 2023. (Doc. 14.)

I.  **ISSUES ON APPEAL**

Plaintiff asserts the following issues on appeal:

1. Whether the ALJ provided an adequate rationale for not including all of the limitations provided in Scott Kaplan's opinion in the residual functional capacity and in hypothetical questions to the vocational expert.

2. Whether the ALJ properly considered the factors of supportability and consistency when evaluating the persuasiveness of the opinion of treating psychologist Jessica Karle, Ph.D.

(Doc. 17.)

II. **STANDARD OF REVIEW**

The Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is de novo." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

### III. ANALYSIS

Plaintiff takes issue with the ALJ's handling of two different doctors' opinions. The undersigned addresses each argument in turn.

**A. Issue One: Scott Kaplan, Psy. D.'s Opinion**

Plaintiff argues that, although the ALJ found Dr. Kaplan's opinion "persuasive" (Tr. 26), the ALJ improperly omitted from the RFC additional limitations Dr. Kaplan found would be appropriate, including the need to utilize a job coach and the need for a supportive work environment. (Doc. 17 at 23.)

On November 19, 2020, Dr. Kaplan completed a General Intellectual Evaluation and General Personality Evaluation. (Tr. 837.) Dr. Kaplan ultimately opined that Plaintiff would be "an adequate candidate for Vocational Rehabilitation services and activities if eligible and so qualifies." (Tr. 839.) He then went on to make the following recommendations:

> Based on the present test results, formal mental health treatment is recommended. Psychotropic medications are recommended due to [Plaintiff's] schizoaffective disorder, depressive type, and associated features. Individual psychotherapy is recommended and should focus on reducing depression while increasing her coping skills and furnishing her with reality therapy. The utilization of a cognitive-behavioral therapeutic orientation would appear most beneficial. She is not a good candidate for a traditional two and/or four-year academic environment due to her borderline level of intellectual functioning, mental health condition, and related cognitive deficits. She would appear better suited for a traditional vocational training program. She is equally suited for an environment emphasizing verbal skills relative to one emphasizing visual motor and hand eye coordination abilities. This is due to both her low average verbal comprehension score and perceptual reasoning

> score. **She should not be placed in any high stress, high demand, complex or fast paced environment. She will require a somewhat structured setting again due to her borderline intellectual functioning in conjunction with her psychological impairments. Lastly, she will require job training, job placement, guidance and counseling, and career exploration. She may require the utilization of a job coach and may also require somewhat of a supportive work environment.** Her prognosis is guarded. The above referenced treatment modality should prove to be of clinical value.

(*Id.*) (emphasis added). The ALJ reviewed these findings and found Dr. Kaplan's opinion "persuasive" because it was "well supported" by the overall medical record. (Tr. 26.)

However, Plaintiff asserts that the ALJ omitted many of Dr. Kaplan's suggested limitations from the RFC, including the possibility that Plaintiff may need to utilize a job coach or may require a somewhat supportive work environment, without explanation. (Doc. 27 at 23.) Plaintiff seeks remand for "the ALJ to clarify whether (1) only portions of Dr. Kaplan's opinion were found persuasive; or (2) the ALJ mistakenly failed to include the need for job training, job placement, guidance and counseling, career exploration, the utilization of a job coach, and a supportive work environment." (*Id.* at 24.) The Commissioner responds that the ALJ did not have to defer to this opinion in reaching Plaintiff's RFC. (Doc. 19 at 8.)

Here, the ALJ made the following RFC determination:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant must avoid working in loud noise environments such as a factory

- 4 -

>or construction site and never work around both legal and illegal drugs. **She is able to understand, remember and carry out simple, routine tasks; occasionally interact with the public, co-workers and supervisors; concentrate and persist for simple, routine tasks that do not involve fast-paced, high production demands; and adapt to changes in simple, routine work settings.**

(Tr. 22) (footnote omitted) (emphasis added).

While Plaintiff is correct that the ALJ did not adopt verbatim every limitation suggested by Dr. Kaplan, the regulations do not require the ALJ to do so. Under the revised regulations, the Commissioner no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [] medical sources." 20 C.F.R. §§ 1520c(a); 416.920c(a). Rather, the Commissioner must "consider" the "persuasiveness" of all medical opinions and prior administrative medical findings. *Id.* Thus, "finding an opinion persuasive does mean it is controlling." *Sanders v. Comm'r of Soc. Sec.*, No. 2:20-cv-788-NPM, 2022 WL 970181, at *5 (M.D. Fla. Mar. 31, 2022); *see also Sesler v. Comm'r of Soc. Sec.*, No. 8:20-cv-2835-DNF, 2021 WL 5881678, at *6 (M.D. Fla. Dec. 13, 2021) ("The new regulations do not defer or give specific evidentiary weight, including controlling weight, to any medical opinion. . . . Thus, an ALJ need not adopt every part of an opinion that the ALJ finds persuasive.") (internal quotation marks and citations omitted).

For example, in *Sanders*, the plaintiff similarly argued that the ALJ was required to mirror the persuasive opinion of plaintiff's mental-health treater, which was set forth in the form of a questionnaire 2022 WL 970181, at *4. The plaintiff argued that "because the ALJ was persuaded by [the treater's] opinions about moderate and marked mental-health limitations, he was required to adopt the questionnaire's definitions for 'moderate' and 'marked' as well." *Id.* But the court disagreed, stating that "the applicable regulations contemplate that the same terms don't always mean the same thing, and so an ALJ may arrive at a degree of limitation different from that of a claimant's physician." *Id.* Emphasizing that the RFC was ultimately up to the ALJ, the court concluded that it would not be appropriate to find a mental RFC questionnaire dictated a more restrictive RFC. *Id.* at *5–6; *accord Turk v. Comm'r of Soc. Sec.*, No. 6:21-cv-492-RBD-LHP, slip op. at *13–15 (M.D. Fla. May 20, 2022) (finding that plaintiff had failed to demonstrate that the relevant opinion was actually inconsistent with the RFC determination and had not otherwise provided any authority to demonstrate that the ALJ was required to adopt the entirety of the opinion into the RFC), *report and recommendation adopted*, slip op. at *1–2 (M.D. Fla. June 9, 2022).

Ultimately, a claimant's RFC assessment is the province of the ALJ. *See* 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c); 416.945(a)(3), 416.946(c); *accord Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) (unpublished) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive"). So long as

the ALJ properly evaluates the medical opinion—which Plaintiff does not contest—the only issue is whether substantial evidence supports the ALJ's opinion. *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). Here, Dr. Kaplan's opinion supplies substantial evidence in support of the ALJ's RFC. Dr. Kaplan opined that Plaintiff should not be placed in a high stress, complex, or fast-paced environment and that Plaintiff would require structure. The ALJ consequently crafted an RFC that limited Plaintiff to simple tasks, not involving fast-paced or high production demands. Thus, the RFC is supported by substantial evidence. Because "an ALJ need not adopt every part of an opinion that the ALJ finds persuasive," the undersigned finds Plaintiff's argument unconvincing.[2] *Rivera Misla v. Comm'r of Soc. Sec.*, No. 6:20-cv-1076-DCI, 2021 WL 2417084, at *2 (M.D. Fla. June 14, 2021).

### B. Issue Two: Jessica Karle, Ph.D.'s Opinion

Next, Plaintiff argues that the ALJ did not adequately articulate the factors of supportability and consistency when evaluating Plaintiff's treating psychologist Dr. Karle's opinion. (Doc. 17 at 25.)

---

[2] Moreover, Plaintiff did not argue that the omitted portions of Dr. Kaplan's opinion were actually medical opinions, as that term is defined by the Regulations, that the ALJ was required to incorporate into the RFC finding. *See Rivera Misla*, 2021 WL 2417084, at *2 & n.3.

In Dr. Karle's October 1, 2021 opinion, she opined that Plaintiff was at least "seriously limited" in most abilities needed to do unskilled work, including the ability to maintain attention for a two-hour segment. (Tr. 845.) As to this opinion, the ALJ stated:

> In a medical source statement dated October 1, 2021, Dr. Jessica Karle, Ph.D., opined that the claimant has no useful ability to function to sustain an ordinary routine, work in coordination with or in proximity to others, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and deal with normal work stress. In addition, she is unable to meet competitive standards in maintaining attention for 2-hour segments, making simple work-related decisions, accepting instructions and responding appropriately to criticism from supervisors, and getting along with co-workers. The claimant would be unable to competitive standards relating to carrying out detailed instructions and would have seriously limitations with interacting appropriately with the general public, maintaining social appropriate behavior, understanding and remembering detailed or very short and simple instructions, and maintaining regular attendance. Dr. Karle noted that the claimant has significant anxiety including panic attacks that have been observed during sessions and delusions and paranoid thoughts that interfere with her ability to initiate and maintain interactions with others and complete tasks. Dr. Karle also noted that the claimant reports being easily triggered by men as well as individuals of certain ethnic backgrounds, which she relates to past traumas, and that she affects her ability to ask for help and use public transportation. She is impulsive and has difficulty regulating her mood and emotions and behavior. In addition, Dr. Karle noted that the claimant has been completely abstinent for over 2 months and she continues to have anxiety, delusions and mood instability. Dr. Karle opined that the claimant would miss more than four days of work per month (Exhibit 19F).

(Tr. 26–27.) The ALJ ultimately found Dr. Karle's opinion "unpersuasive because it appears to be based primarily on the claimant's own reports and it is not supported by the overall medical record. The record demonstrates that the claimant has good response to medication when she is compliant and refrains from substance abuse." (Tr. 27.)

Under the revised regulations, the Commissioner considers five factors when evaluating a medical source opinion: 1) supportability; 2) consistency; 3) relationship with the claimant;[3] 4) specialization; and 5) other factors "that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c); 416.920c(c). The most important of these factors are supportability and consistency, and the ALJ must explain the consideration of those two factors. *Id.* §§ 404.1520c(a), (b)(2); 416.920c(a), (b)(2). The ALJ may, but is not required to, explain how he or she considered the other factors (i.e., relationship with claimant, specialization, and "other factors"). *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2). In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis—the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source. *Id.* §§ 404.1520c(b)(1); 416.920c(b)(1). The regulations state:

---

[3] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)– (v).

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

*Id.* In sum, the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record.

Plaintiff asserts that the ALJ's treatment of Dr. Karle's opinion was speculative and failed to follow the revised regulations. (Doc. 17 at 27.) Specifically, Plaintiff argues that the ALJ failed to consider Dr. Karle's explanations for her opinion. (*Id.* at 26.) Plaintiff also states that the ALJ failed to articulate *what* was inconsistent about Dr. Karle's opinion with other sources in the record. (*Id.* at 30.) The Commissioner responds that the ALJ properly evaluated Dr. Karle's opinion. (Doc. 19.)

The ALJ's two reasons for discounting Dr. Karle's opinion were that: (1) Dr. Karle's opinion was based primarily on Plaintiff's own reports, and (2) Dr. Karle's opinion was inconsistent with the medical record because the record demonstrates Plaintiff has a good response to medication when she is compliant and is not abusing substances. (Tr. 27.) The undersigned finds this explanation insufficient. Although the ALJ listed two reasons for finding Dr. Karle's opinion unpersuasive, the ALJ failed to articulate *how* that reasoning is related to the factors of supportability and consistency, or otherwise explain the consideration of those two factors. While ALJs are not

required to use the magic words of supportability and consistency in their opinions, *see* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), the ALJ must articulate enough substance for the court to evaluate the factors. *Rivera v. Kijakazi*, No. 6:21-cv-93-AAS, 2022 WL 2965883, at *4 (M.D. Fla. July 27, 2022). That was not done here.

As to supportability, the ALJ concluded that Dr. Karle's opinion was based primarily on Plaintiff's own reports. (Tr. 27.) The Commissioner attempts to support this conclusion by stating that the ALJ compared Dr. Karle's October 2021 opinion with Plaintiff's prior visits to a nurse at Dr. Karle's clinic around the same timeframe. (Doc. 19 at 15–16.) But that characterization is a stretch. The ALJ did not mention Plaintiff's October 27, 2020, visit with Dr. Karle or any other visit to her specifically. (Tr. 674.) And while Plaintiff treated with a nurse practitioner at Dr. Karle's clinic on several occasions, the ALJ mentioned only one of those visits, saying, "Later on October 30, 2020, the claimant reported that she was only taking Seroquel to help her sleep and that she discontinued Seroquel XR because she did not like the way it made her feel. She was continued on Seroquel and Vraylar was added to her regimen (Exhibit 11F, pp. 18-19)." (Tr. 25.) Looking at this statement, it contains no analysis of (1) how Dr. Karle's October 2021 opinion was not supported by her October 2020 treatment note, (2) why the ALJ concluded that Dr. Karle's October 2021 opinion "appear[ed] to be based primarily on the claimant's own reports," or (3) why, even if it was, it led the ALJ to a finding that the opinion was unpersuasive. (Tr. 27.) The undersigned cannot be tasked with searching the ALJ's opinion to piece together a supportability argument. It is clear here that the ALJ did not properly evaluate this

factor.

As to consistency, the ALJ concluded that Dr. Karle's opinion was inconsistent with the medical record because the record demonstrated that Plaintiff has a good response to medication when she is compliant and is not abusing substances. (Tr. 27.) The Commissioner argues this statement was adequately thorough when looking at the ALJ's opinion as a whole, again requiring the undersigned to marshal the evidence in support of the ALJ's finding. (Doc. 19 at 17.) The Commissioner states that elsewhere in the opinion, the ALJ discussed Plaintiff's response to medication and the opinion of Dr. Michael Lace, Psy.D.—an independent psychological consultant—who reviewed the record evidence, including Dr. Karle's treatment notes and opinion. (*Id.* (citing Tr. 27).) The ALJ found Dr. Lace's opinion persuasive because it was "an accurate evaluation of the overall medical record." (Tr. 27.)

The ALJ noted that Dr. Lace found that Plaintiff had a history of substance use disorders, including "opioid use disorder with a history of marijuana, cocaine and methamphetamine use in questionable remission." (*Id.*) And that because of this history of abuse, "a 2-month period of sobriety, [was] not enough to gauge the severity of the claimant's symptoms without substance use." (*Id.*) But the ALJ found that Dr. Karle's opinion was not consistent with the overall record solely because "[t]he record demonstrates that the claimant has good response to medication when she is compliant and refrains from substance abuse." (*Id.*) This internal inconsistency is not explained by the ALJ. Again, the undersigned concludes that the ALJ did not properly evaluate this factor.

An ALJ's conclusory statements that an examining physician's opinions are unpersuasive and unrelated to the record are inadequate unless the ALJ articulates specific factual support to establish such conclusion. *See Pierson v. Comm'r of Soc. Sec.*, 6:19-cv-01515-RBD-DCI, 2020 WL 1957597, at *7 (M.D. Fla. Apr. 8, 2020), *report and recommendation adopted*, 2020 WL 1955341, at *1 (M.D. Fla. Apr. 23, 2020). The Court is unable to determine whether the ALJ's decision is supported by substantial evidence because the ALJ failed to build the necessary "accurate and logical bridge from the evidence to [her] conclusion." *Flentroy-Tennant v. Astrue*, No. 3:07-cv-101-J-TEM, 2008 WL 876961, at *8 (M.D. Fla. Mar. 27, 2008).

While the Commissioner has examined the record and attempted to provide support for the ALJ's assessment of Dr. Karle's opinion, such *post-hoc* rationalizations do not provide the basis for judicial review of an administrative decision. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). This Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 782, 782 (11th Cir. 2014).

IV. **CONCLUSION**

Upon consideration of the foregoing, it is **ORDERED** and **ADJUDGED** that:

1. The Commissioner's final decision in this case is **REVERSED AND REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on December 4, 2023.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE